THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**KENNETH WILLIAMS,**

    **Plaintiff,**

v.                                                                                Civil Action No. 1:08-CV-199
                                                                              (Judge Bailey)

**WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS,
JAMES P. CLEMENTS, in his
capacity as President of
West Virginia University, and
BOB ROBERTS, individually and
in his capacity as Director and
Chief of the West Virginia University
Police Department,**

    **Defendants.**

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The above-styled case is presently before the Court on Plaintiff's Motion for Summary Judgment [Doc. 62], filed on October 4, 2010; Defendants' Motion for Summary Judgment [Doc. 61], filed on October 4, 2010; plaintiff's Response [Doc. 65], filed on October 21, 2010; defendants' Response [Doc. 64], filed on October 21, 2010; plaintiff's Reply [Doc. 67], filed on November 4, 2010; and defendant's Reply [Doc. 66], filed on November 4, 2010.  The Court has reviewed the record and the arguments of the parties and finds that Plaintiff's Motion for Summary Judgment [Doc. 62] should be **GRANTED** and the Defendants' Motion for Summary Judgment [Doc. 61] should be **DENIED**.

1

## I. BACKGROUND AND PROCEDURAL HISTORY

West Virginia University ("WVU") has a policy whereby WVU police can issue a "Trespassing Form" to any individual that an officer deems, in his discretion, to have acted in such a manner that the individual should be banned from some or all WVU property and to determine, in his discretion, the scope and length of time of the ban. In the present case, the plaintiff, an African American male, was issued a West Virginia University Department of Public Safety Trespassing Form ("Trespassing Form"), because of alleged conduct in the Mountainlair that "interfered with the peaceful or orderly operations" of WVU. [Doc. 62-1]. The Trespassing Form barred him from "all buildings in or adjacent to West Va. University without written permission of the Director of Public Safety." Id. It stated that, if he returned to "all buildings in or adjacent to West Va. University without written permission of the Director of Public Safety," "a warrant for your arrest will be obtained." Id. The Trespassing Form had no expiration date and did not identify or advise Mr. Williams of any appeal rights. (See Id.).

In his motion for summary judgment, Mr. Williams contends that the policy and practice at WVU, including WVU's action in issuing the Trespass Form in this case, violates the constitutions of West Virginia and of the United States in one or more of the following respects: (1) WVU has no written policies that articulate guidelines or standards as to when to issue a Trespassing Form, as to the type of conduct or behavior that justifies the issuance of a Trespassing Form, as to the scope of the area covered by the Trespassing Form, or as to the duration of time that the Trespassing Form will be in effect; (2) WVU provides no training to its officers on how or when to issue the Trespassing Forms, the area to be covered by the Form, or the duration that the Trespassing Form is to remain in effect;

2

(3) at the time that Mr. Williams was issued a Trespassing Form, WVU issued the Trespassing Form to individuals without any articulated procedure for the individual to contest the form or to appeal its issuance[1]; and (4) if there were notice of an appeal, that appeal procedure would not offer due process because there are no guidelines or standards to guide the appellate officer in his decision.

Mr. Williams contends that issuing the Trespassing Forms under current WVU policies criminalizes behavior, stigmatizes the individual receiving the form, and interferes with liberty interests without due process of law. Plaintiff asks that this Court: (a) declare that the current policies and practices regarding the issuance of Trespassing Forms violate the West Virginia and United States constitutions; (b) enjoin WVU from continuing to issue Trespassing Forms until such time as it puts in place a policy and procedure that meets constitutional requirements; (c) enjoin WVU from enforcing the Trespassing Form issued to Mr. Williams; and (d) award the plaintiff the damages stipulated by the parties and attorney fees and costs.

In response, defendants argue that the Mountainlair is not a public place for purposes of constitutional analysis and that plaintiff was properly excluded from the Mountainlair based on West Virginia Code § 61-3B-4. ([Doc. 61] at 9). Specifically, the defendants argue that the officer's discretion in issuing Trespass Forms is sufficiently limited. Further, defendants contend that there was an appeal process available to plaintiff and that he availed himself of that appeal process when he contacted the Chief of Police to request permission to attend an on-campus event. ([Doc. 61] at 14).

---

[1] This practice has since been modified

## II. UNDISPUTED MATERIAL FACTS

1. On October 11, 2007, Mr. Williams, an African American male, visited the Mountainlair. (Compl. [Doc. 1] ¶ 8); 36, 48 (describing Mr. Williams' location at the Mountainlair); *see also* Answer to First Amended Complaint [Doc. 40] at 1 ("Defendants admit that Plaintiff is an African American male")).

2. The Mountainlair is the student union building at WVU which is generally open to the public. (Aff. of Joplin [Doc. 61-1]; Roberts Depo. [Doc. 62-2] at 40 (acknowledging that the public is generally welcome at the Mountainlair); Goins Depo. [Doc. 62-3] at 49 (Q. The Mountain Lair is open to the public; correct? A. That's correct.")).

3. The area of the Mountainlair in which the plaintiff was observed is a large open area containing multiple storefront eating establishments, a convenience store, an enclosed restaurant, and dozens of tables and chairs where students can sit to eat, study, or gather. (Aff. of Joplin [Doc. 61-1]).

4. On October 11, 2007, someone called the WVU Facility Manager, Michael Joplin, at the Mountainlair and stated that a man had stuffed "a bag under a table" in the Mountainlair and walked away. (WVU DPS Report [Doc. 62-4] (statement of Michael Joplin, WVU00060)).

5. Mr. Joplin and another man went to investigate and found Mr. Williams "sitting in the McCoy's area with a bag under the table." (WVU DPS Report [Doc. 62-4] (statement of Michael Joplin, WVU00060)).

6. The bag was from the Dollar General Store. (Goins Depo. [Doc. 62-3] at 48).

7. Mr. Joplin after finding Mr. Williams at the table with the bag under the table, then called the DPS. (Id.).

8.  Two DPS officers went to the Mountainlair where they found "a black male, wearing a trench coat, sitting down with a yellow bag lying on floor [sic] next to his feet." (WVU DPS Case Report Narrative [Doc. 62-4] at WVU00063).

9.  The officers were also told that the African American male's "mannerisms caused fear in some of the employees and the individual had previously worked for WVU." (Id.).

9.  The officers told Mr. Williams that his "actions and mannerisms were upsetting to some employees of the University and that basically is the reason for DPS's appearance at the Mountainlair." (Id.).

10. The officers detained Mr. Williams and searched him for a weapon. (Id.).

11. The officers found no weapon on Mr. Williams. (Id.).

12. Although the officers found no weapon, they "escorted [Mr. WIlliams] to the Mountainlair dining area and searched him more extensively." (Id.).

13. The officers required him to take off his coat and empty his pockets. (Goins Depo. [Doc. 62-3] at 43-44).

14. In searching Mr. Williams, the officers found a "California ID and $300.00 or more in a case." (Goins Depo. [Doc. 62-3] at 73-74).

15. Chief Roberts acknowledged that the officers did not find anything inappropriate when they searched Mr. Williams. (Roberts Depo. [Doc. 64-2] at 44).

16. Chief Roberts stated that there was no evidence that Mr. Williams was present in the Mountainlair to do anything of a criminal nature. (Roberts Depo. [Doc. 64-2] at 47 ("Q. Did you see -- did he, after they searched him and found nothing, would you agree that there was no evidence that he was there to do anything wrong? A.

[Roberts] I don't see where there was any criminal intent for him to do anything wrong, no." )).

17. The officers then insisted that Mr. Williams sign the WVU Department of Public Safety Trespassing Form. (WVU DPS Report [Doc. 62-4] at WVU00063).

18. The Form not only prohibited him from returning to the Mountainlair, but also barred him from "all buildings in or adjacent to West Va. University." (Trespassing Form [Doc. 62-1]).

19. The Form told him that he had "interfered with the peaceful or orderly operations" of WVU and that, if he returned to "all buildings in or adjacent to" WVU without written permission of the WVU Director of Public Safety, "a warrant for your arrest will be obtained." (Id.).

20. The officers escorted Mr. Williams off WVU property and told him that if he came back on any University properties that he would be arrested for trespassing. (Id.).

21. WVU officers are authorized to issue Trespassing Forms barring persons from buildings and campus areas normally open to the public. (See Id.).

22. WVU does not have any policy in place that articulates the standards or guidelines for the issuance of Trespassing Forms by WVU police officers. (See Roberts Depo. [Doc. 62-2] at 17] (stating that the current policy manual does not include anything that specifically addresses the Trespassing Form), and Amended Notice of Deposition Pursuant to Rule 30(b)(6) [Doc. 7] No. 3 (noting that Roberts was produced as a witness to address "[a]ny and all training given to officers at WVU" regarding the WVU Trespassing Forms)).

23. WVU police officers are not told the level of severity of a problem that justifies

issuance of a Trespassing Form. (Roberts Depo. [Doc. 62-2] at 24 (stating: "Q. Well, what are officers told is the level of severity of the problem that should result in the issuance of the trespassing notice? A. They are not. They use their judgment and the code."); see also Roberts Depo. [Doc. 62-2] at 25 (stating "Q. Well, do you know what the lieutenants and the sergeants and field training officers are telling people the level of severity is? A. No. I am not with them when they are doing that. Q. Have you ever asked? A. No. It's never been an issue. So, no, I have not asked.").

24. There are no written policies to guide officers on how to issue a Trespassing Form. (Roberts Depo. [Doc. 62-2] at 21).

25. WVU has no standards for the scope of the ban created by the Trespassing Form, i.e., whether it applies to a single building, multiple buildings, the entire campus, or, as in the present case, even buildings adjacent to WVU. (Goins Depo. [Doc. 62-3] at 78).

26. The scope of the warrant is in the officer's discretion. (Goins Depo. [Doc. 62-3] at 78 ("Q. The trespass form in that case, were they banned from all WVU property or just the resident halls? A. Sometimes it's specific. It's not always all WVU property. If the incident was at Towers, it might have been just for Towers. It's kind of the officer's discretion at that point. Q. Is there any guidelines on how much of WVU? A. How broad of an area that it has to be? Not particularly. Depending on the offense maybe. Q. But no guidelines that you've ever seen on that? A. No. It's pretty much the officer's discretion.)).

27. WVU has failed to articulate any standards regarding the duration of the

Trespassing Forms, i.e., whether the bar from some or all of the campus lasts days, months, years, or for life. (Trespassing Form [Doc. 62-1]; Roberts Depo [Doc. 62-2], 51; *see also* Roberts Depo. [Doc. 62-2] at 29 ("Q. Now, has anybody ever discussed whether you should be barring people for a lifetime? A. No. Q. But these forms do bar people for a lifetime, don't they? A. They theoretically could, yes. Q. Well, is there anything on here to suggest to somebody that it has a termination date? A. No, other than that they can come and see me, no.")).

28. Roberts contends that individuals who are issued a Trespassing Form may appeal to him, but the form does not include any specific language to advise individuals that they may appeal to Roberts. (Trespassing Form [Doc. 62-1]; Roberts Depo. [Doc. 62-2] at 29).

29. There are no policies regarding appeal procedures. (Roberts Depo. [Doc. 62-2] at 30-31; *see also* Roberts Depo. [Doc. 62-2] at 31 ("Q. When did you first make a decision to implement such a plan? A. Actually, when I was reviewing this form and actually considering how it's written, without written permission doesn't really clearly explain to someone that they can come in and appeal the officer's decision. Q. That's the first time you noticed that there is no clear explanation of a right of appeal on a form? Is -- when did you make that observation? Last week, last month, last year? A. Actually, in reviewing for this case.")).

30. The Trespassing Warrant as issued to Mr. Williams bars his access to facilities that WVU holds open to the public including, but not limited to: the Mountainlair; the Coliseum; the football stadium; Creative Arts Center; the dental clinics; medical clinics; hospital; and, according to Chief Roberts, the grass and lawns adjacent to

the buildings as well as non-WVU buildings adjacent to the campus. (Trespassing Form [Doc. 62-1]; Roberts Depo. [Doc. 62-2] at 27).

31. Roberts admits that he knew the Trespassing Form issued to Mr. Williams was incorrect; and he admitted that he does not know of anyone who told Mr. Williams that the DPS considered the form incorrect. (Roberts Depo. [Doc. 62-2] at 28).

## III. DISCUSSION

### A. Standard of Review

The moving party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See* ***Charbonnages de France v. Smith***, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the nonmoving party and to view the facts in the light most favorable to the nonmoving party. ***Anderson***, 477 U.S. at 255. The moving party has the burden to show an absence of evidence to support the nonmoving party's case. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. ***Anderson***, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. ***Id.*** at 252.

9

"At the summary judgment stage, the Judge's function is not himself to weigh the evidence and determine whether there is a genuine issue for trial." **Anderson**, 477 U.S. at 247. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment." **Id.**

"Sufficiency of evidence to create an issue of fact for the jury is solely a question of law." **Houston v. Reich**, 932 F.2d 883 (10th Cir. 1991). The Court does not have to accept unwarranted inferences, or unreasonable conclusions or arguments as true factual allegations. **Eastern Shore Markets, Inc. v. JD Associates LTD**, 213 F.3d 175 (4th Cir. 2000) (citing 5a Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990 and Supp. 1998)).

B.  Application of West Virginia Code § 61-3B-4

West Virginia Code § 61-3B-4(b) states:

> If a person not authorized to have access to a residence hall or student facility enters such a residence hall or student facility, that person may be asked to leave such residence hall or student facility notwithstanding the fact that he or she has not interfered with the peaceful or orderly operation of such residence hall or student facility or otherwise committed a breach of the peace or violated any statute or ordinance. Such request to leave may be made by the president or other administrative head of the institution of higher education, an employee designated by the president to maintain order in the residence hall or student facility, a campus police officer appointed pursuant to the provisions of section five, article four, chapter eighteen-b of this code, or a municipal police officer, a sheriff or deputy sheriff, or a member of the West Virginia State

> Police.

The statute also defines "student facility" as:

> ...a facility owned, operated or controlled by an institution of higher education at which alcoholic liquor or nonintoxicating beer is purchased, sold or served to students enrolled at such institution, but does not include facilities at which athletic events are regularly scheduled and an admission fee is generally charged.

W.Va. Code § 61-3B-4(a)(2).

This statute limits the term "student facility" to include only those establishments on campus which serve alcohol. W.Va. Code § 61-3B-4(b). For this reason, this Court finds that the portion of the Mountainlair in which the plaintiff was found is not a "student facility." If the entire Mountainlair were a "facility at which alcoholic liquor or nonintoxicating beer was sold or served," then students and other persons under the age of 18 would not be permitted to be there unless accompanied by a parent. 176 CSR-1-6.1.n.

Even if W.Va. Code § 61-3B-4 did apply to the portion of the Mountainlair in which the plaintiff was found, it would not be dispositive. The plaintiff does not challenge the constitutional validity of the statute, which permits the campus police to request a person to leave the premises, but rather challenges the constitutionality of the University policy which permits the issuance of the Trespassing Forms banning an individual from all or a portion of the University campus.

C. <u>The Trespassing Form Issued to Plaintiff Violated his Procedural and Substantive Due Process Rights</u>

The Trespassing Form issued to Mr. Williams was allegedly issued pursuant to West Virginia Code § 61-3B-4(b), yet nothing in that statute authorizes the banning of an

11

individual from all or a portion of the University campus.  The officers noted that Mr. Williams had scared some of the patrons and employees of the Mountainlair.  He was sitting in the food court area of the Mountainlair, wearing a trench coat, and carrying a Dollar General bag.

The statute provides for Mr. Williams' removal "...notwithstanding the fact that he...has not interfered with the peaceful or orderly operation of such residence hall or student facility or otherwise committed a breach of the peace or violated any statute or ordinance." W.Va. Code § 61-3B-4(b).  Here, however, the citation issued to Mr. Williams stated that he had "interfered with the peaceful or orderly operation of such residence hall or student facility or otherwise committed a breach of the peace or violated any statute or ordinance."  *See* W.Va. Code § 61-3B-4(b); (UMF 19).  Defendant contends that plaintiff "interfered with the peaceful or orderly operation" of the Mountianlair by sitting in the food court area, wearing a trench coat, and carrying a Dollar General bag.  (UMF 8-10) (noting the reason the officers approached plaintiff was because his "mannerisms" and his action in "wearing a trench coat, sitting down with a yellow bag lying on floor [sic] next to his feet" were upsetting to "some employees of the University").

First, the Court will address the facial validity of the statute.

### 1. The Trespassing Policy is Unconstitutionally Vague

The policy of issuing Trespassing Forms, on its face, is vague and violates plaintiff's procedural due process rights.  "The void-for-vagueness doctrine finds its origin in the constitutional principle of procedural due process.  The primary issue raised by the doctrine is whether the particular statute is sufficiently definite to give fair notice to one who would avoid its sanctions, and ascertainable standards to the fact finder who just adjudicate guilt

under it.  Although vagueness or indefiniteness has been variously defined, perhaps the classic expression of this concept is to be found in **Connally v. General Construction Company**, 269 U.S. 385, 391 (1926), wherein the Supreme Court stated that 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'  The vagueness doctrine, then, is rooted in a 'rough idea of fairness.'  Impermissibly vague laws offend this standard of fairness because they may trap an unwary individual and encourage arbitrary and capricious enforcement."  **Smith v. Sheeter**, 402 F.Supp. 624, 630 (S.D. Ohio 1975).  Here, the statute provides for removal of plaintiff–not based on arbitrary or fluctuating standards of behavior–but based on no standards at all.

In **Sheeter**, the court considered a statute of similar effect which stated that no person, "in circumstances which create a substantial risk of disrupting the orderly conduct of lawful activities at a college or university" may enter or remain on University property.  In holding the statute deficient, the court noted that "[t]his provision suffers from both vagueness and overbreadth.  No criteria or standards are set forth whereby even a wary individual could reasonably know what will be considered a 'disruption' of the orderly conduct of lawful activities."  402 F.Supp. at 631.

The statute under which the University claims authority for the Trespassing Forms provides for exclusion of an individual "...notwithstanding the fact that he...has not interfered with the peaceful or orderly operation of such residence hall or student facility or otherwise committed a breach of the peace or violated any statute or ordinance."  W. Va. Code § 61-3B-4(b).  Thus, an unauthorized person may be excluded  based on doing

13

nothing. In fact, the statute defines the 'offending behavior' in the negative, i.e. by doing nothing you could be excluded from the premises.[2] Thus, based on the text of the statute and based upon the lack of any criteria for the issuance of a Trespassing Form, an individual can be excluded from the premises based on the whim of a WVU Officer.

"Although the [vagueness] doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine-the requirement that the legislature establish minimal guidelines to govern law enforcement.'" *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983).

In *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999), Justice Stevens stated that "even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." citing *Kolender v. Lawson,* 461 U.S. 352, 358 (1983).

In *Squire v. Pace*, 516 F.2d 240, 241 (4th Cir. 1975), the Fourth Circuit affirmed the overturning of a disorderly conduct statute, noting that the statute violated three constitutional values: (1) it did not inform a defendant what conduct is proscribed; (2) it allowed policemen, prosecutors, and courts to impose their own personal predilections in determining what should be permissible behavior; and (3) it could inhibit the exercise of first

---

[2] In fact, the only thing the police report states that Mr. Williams was doing to 'disturb' anyone in the Mountainlair was his "mannerisms" and his action in "wearing a trench coat, sitting down with a yellow bag lying on floor [sic] next to his feet." (UMF 8-10). As noted by Chief Roberts in his deposition, there was no evidence, even after the officers searched Mr. Williams, that he was there to do anything of a criminal nature. (UMF 16).

amendment rights because it has been construed to embrace speech, which, unaccompanied by acts, need do no more than outrage the sense of public decency.

Here there are no guidelines with regard to the issuance of Trespass Forms. Chief Roberts testified in his deposition that the officers are simply to use their discretion in issuing the Trespass Forms. (UMF 22-24). Further, there are no standards with regard to the level of severity of a problem that necessitates issuance of a Trespass Form (UMF 23), nor are there standards with regard to the scope of the ban (UMF 25).

Thus, this Court finds that the policy of issuing Trespass Forms is unconstitutionally vague because the statute fails to "give sufficiently fair notice to one who would avoid its sanctions, and [fails to provide] ascertainable standards to the fact finder who just adjudicate guilt under it." **Smith**, 402 F.Supp. at 630. As such, the Court finds that the issuance of the Trespass Form to Mr. Williams was a violation of his procedural due process rights.

2. <u>The Lack of Appeal Process was a Violation of Plaintiff's Procedural Due Process Rights</u>

Even assuming that the statute was not unconstitutionally vague and that plaintiff had been properly excluded from the Mountainlair, the lack of appeal process after the issuance of the Trespass Form was also a violation of his procedural due process rights. See **Dunkel v. Elkins**, 325 F.Supp. 1235, 1246 (D. Md. 1971) (holding outsider to university community had constitutional right to a hearing in connection with an order excluding him from Maryland state campuses).

In **Dunkel**, an alumnus of the University of Maryland was excluded from the buildings and grounds of the University of Maryland after he was photographed "blocking

15

and disrupting vehicular traffic on the University's grounds" and seen on the front steps of the administrations building shortly after people–including students–broke down the doors and forcibly entered the building. *Dunkel*, 325 F.Supp. at 1239. He filed suit arguing the notice was unconstitutional. In considering the challenge, the court discussed the ability of a public university to exclude outsiders from the campus. The Court noted that "[w]hile the State undoubtedly possesses the power to control the use made of its premises, it cannot do so without regard to the Constitution." *Id.* at 1242 (citing *Hague v. Committee for Industrial Organization*, 307 U.S. 496, 515 (1939)). The court then went on to consider the authority of the school to exclude the plaintiff. The court found that as an educational institution possesses the power to suspend students (effectively prohibiting that student from accessing the university), it also has the authority to "prohibit access to its campus to an 'outsider' to the university community if he has engaged in conduct which violates constitutional standards clearly embodied in state law." *Dunkel*, 325 F.Supp. at 1244. The court went on to conclude that the university violated Dunkel's procedural due process rights when it excluded him from the campus without providing him with the opportunity for a hearing. *Id.*

Likewise, here, plaintiff's procedural due process rights were violated when he was excluded from–not only the WVU campus–but also adjacent buildings and lawns. (See [Doc. 62-1]). Defendants argue that an appeals process, and thus the option of a hearing, was provided because individuals who are issued a Trespassing Form may appeal to Chief Roberts. (UMF 29). The problem with defendants' contention is that the form issued to plaintiff–nor any other document provided to the Court–states that plaintiff was to contact Chief Roberts in order to appeal the Trespassing Form.

16

Further, defendants argue that because plaintiff contacted Chief Roberts in order to be allowed back onto campus to attend his daughter's graduation, that he did avail himself of the 'appeal process.' This Court does not find that to be the case. An appeal provides an individual with notice and the opportunity for a hearing. At the hearing, it is the burden of the school to show that the cited individual violated the statute providing for his or her exclusion. See **Dunkel**, 325 F.Supp. at 1244 (noting "In any such hearing, the burden of proof would have been on the University officials to establish that Dunkel... had no lawful business to pursue in the institution, or had been acting in a manner disruptive of or disturbing to the normal educational functions of the institution." (internal quotations omitted)); see also **Braxton v. Municipal Court for the San Francisco Judicial District of the City and County of San Francisco**, 10 Cal.3d 138, 145 (stating, "Even when an exclusion order issues without a hearing, a post-exclusion hearing must be held as soon as reasonably possible [but] not later than seven days following a request by the person excluded."). Here, the only evidence before the Court shows that plaintiff emailed Chief Roberts requesting permission to return to campus, and that he was granted access to the campus for one day. ([Doc. 61-9]). There was no hearing, and no burden placed on the WVU officers to show that plaintiff was properly excluded from campus.

**IV.    Damages**

In the briefing in this case, the plaintiff notes that he is seeking damages and that the amount of damages have been stipulated. This Court requires additional information and argument in order to rule on this issue. Within two weeks of the issuance of this Order, the plaintiff shall file a supplemental memorandum on the issue of damages, including

17

against whom and upon what theory damages should be awarded, whether the stipulation as to damages constitutes a waiver of the Eleventh Amendment prohibition of damages against a state, and the amount and nature of the damages. Within two weeks thereafter, the defendants shall file a supplemental memorandum addressing the same issues.

## V. Conclusion

Based upon the foregoing:

A. Plaintiff's Motion for Summary Judgment [Doc. 62] is **GRANTED**;

B. Defendants' Motion for Summary Judgment [Doc. 61] is **DENIED**;

C. This Court declares the Trespassing Form policy to be unconstitutional;

D. The defendants are hereby enjoined from issuing Trespassing Forms under the present policy;

E. The Trespassing Form issued to the plaintiff is hereby **VACATED**;

F. The plaintiff shall file his supplemental memorandum on damages within two weeks of the date of entry of this Order; and

G. The defendants shall file their supplemental memorandum on damages within two weeks of the receipt of plaintiff's supplemental memorandum.

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** March 2, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE